Case 3:20-mj-00065 Document 1 Filed on 04/03/20 in TXSD Page 1 of 17
AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

United States Courts
Southern District of Texas
FILED
April 03, 2020
David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **3:20-mj-65**
Lenovo laptop computer serial #R90JN90H and Apple )
iPhone XR model A1984 currently located at the HSI )
Office, 601 Rosenberg Avenue, Galveston, Texas )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A et seq. and 18 U.S.C § 545 | Certain activities relating to material involving the sexual exploitation of minors and Smuggling goods into the United States |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ DeWayne Lewis*
Applicant's signature

DeWayne Lewis, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by ___telephone___ *(specify reliable electronic means)*.

Date: 4-3-20

*/s/*
Judge's signature

City and state: Houston, Texas

Andrew M. Edison
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FOLLOWING:<br><br>Lenovo laptop computer serial # R90JN90H and Apple iPhone XR (model A1984) IMEI # 357341095264146 currently located at the Homeland Security Investigations office at 601 Rosenberg Avenue, Galveston, Texas | Case No. **3:20-mj-65** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, DeWayne Lewis, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This Affidavit is being made in support of an application for a warrant to search the following items:

    1) Apple iPhone XR model A1984 cellular telephone, IMEI# 357341095264146
    2) Lenovo laptop computer serial # R90JN90H

The aforementioned items (hereafter the SUBJECT PROPERTY) are currently being held as evidence within the Homeland Security Investigations (HSI) Galveston offices, 601 Rosenberg Avenue, Galveston, Texas. The SUBJECT PROPERTY was owned and used by an adult passenger (Darren McCoy DOB: 11/26/1967) entering the United States from foreign (Mexico) via cruise ship into the Port of Galveston, Texas. McCoy was the subject of a previous child exploitation investigation in the Dallas/McKinney, Texas area. When U.S. Customs and Border Protection Officers conducted an inspection of McCoy's luggage and electronics, they found nude/exposed images of children involved in sex acts with an adult.

2. I am a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) office in Galveston, Texas. I have been so employed since June 2002. As part of my duties as an ICE agent, I investigate criminal violations related to child exploitation and child pornography, including violations pertaining to adults transferring obscene material to minors, online extortion and/or stalking, adults attempting to meet with juveniles for sexual encounters and the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 875(d), 1470, 2422(b), 2423, 2251, 2252, 2252A and 2261A(2). I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have participated in the execution of numerous search warrants and covert operations involving child exploitation and the online solicitation of minors, many of which involved child exploitation and/or child pornography offenses. I am in routine contact with experts in the field of computers, computer forensics, and Internet investigations. I annually attend the Dallas Crimes Against Children Conference where I attend various investigative training. I am currently a member of the Houston Metro Internet Crimes Against Children Task Force. This task force includes prosecutors and members of multiple police agencies across the southeast/coastal Texas and Houston metro regions.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. As a result of the investigation described more fully below, there is probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of federal law, including 18 U.S.C. §§ 2252A and 545 are present on the SUBJECT PROPERTY.

## STATUTORY AUTHORITY

5.    This investigation concerns alleged violations of:

a) Title 18, United States Code, Section 2252A which states: (a) Any person who (1) knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography; (2) knowingly receives or distributes (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(5) (B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

b) Title 18, United States Code, Section 2256(8) defines "child pornography" as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where - (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created,

adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

c) Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person;

d) Title 18, United States Code, Section 545, which states: whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, knowing the same to have been imported or brought into the United States contrary to law shall be fined under this title or imprisoned not more than 20 years, or both.

## PROBABLE CAUSE

6. On November 30, 2019, Darren Frank McCoy arrived from Cozumel (Mexico) into the Port of Galveston, Texas aboard the Carnival Vista cruise vessel. McCoy was previously involved in a child exploitation investigation in the Dallas/McKinney, Texas area. McCoy was accompanied to the secondary passenger inspection area by Customs and Border Protection Officers for an inspection of his luggage and electronics. A Lenovo laptop computer serial # R90JN90H was inspected by CBPO Aulds. During the inspection of the laptop, CBPO Aulds discovered images of child pornography in one of the laptop's folders. HSI SA Lewis examined some examples of the images discovered during the inspection. They appeared to be color images of minors between the ages of 1 and 8 years old in various stages of undress in a hospital, mortuary or morgue-type setting. Some of the images depicted an adult male's erect penis in the mouth of the minor corpses. Descriptions of two of the images on the laptop were included below, in part:

One of the color photos depicted what appeared to be a real, deceased, nude infant in a collage-style photo, who appeared to be less than 2 years old, positioned in a pose where an adult male was pressing his erect penis against the child's mouth for the camera's view.

Another color photo depicted what appeared to be a real, deceased minor female, approximately 7-8 years old, in a hospital or morgue setting in a collage-style photo, positioned in a pose where her dress was pulled up to expose her pubic area for the camera's view. Another portion of the collage depicted the female minor with an adult male pressing his erect penis against the child's mouth for the camera's view.

7. The Lenovo laptop computer serial # R90JN90H and McCoy's Apple iPhone XR model A1984 were seized and secured for a more detailed border search by a certified forensic examiner.

8. Special Agent Lewis turned the laptop and iPhone over to Galveston Police Department Detective Garrett Groce, a fellow member of the Houston Metro ICAC Task Force and certified forensic examiner, on December 2, 2019. Det. Groce completed forensic imaging of the devices and provided the Cellebrite report regarding the iPhone to SA Lewis for review. SA Lewis quickly found additional images depicting child pornography stored on the iPhone. Descriptions of three of the images on the Apple iPhone XR model A1984 were included below, in part:

partial title: 050b4a99… was a color photo in a bedroom setting that depicted two nude Caucasian minor females, approximately 10-13 years old, positioned on a bed where one minor was licking the second minor's chest. The second minor was positioned with her feet toward the photographer with her vagina exposed for the camera's view.

partial title: 0668fe50…jpg was a color photo that depicted a Caucasian minor, approximately 8-10 years old, performing oral sex on an adult Caucasian male's erect penis.

partial title: 03e24558…jpg was a color photo in a bedroom setting that depicted a nude Caucasian female, approximately 8-10 years old, wearing a black hood/blindfold facing away from the camera's view as she straddled an adult Caucasian male's penis.

5

9. Special Agents Lewis observed that there were over 83,000 more images and 1,000 videos to be reviewed. Since that review would total weeks to accomplish, SA Lewis secured the Apple iPhone XR model A1984 and Lenovo laptop computer until a search warrant could be acquired.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTERST IN CHILDREN

10. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children which includes the production, distribution, receipt, possession and collection of child pornography:

11. Individuals with a sexual interest in children receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

12. Individuals with a sexual interest in children collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals with a sexual interest in children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower, or "groom," the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

13. Individuals with a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and

security of their home, email account or in "virtual" storage, like in the iCloud or Facebook.com. Individuals with a sexual interest in children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

14. "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

15. Likewise, individuals with a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area or "virtual" storage. These collections are often maintained for several years and are kept close by, or remotely accessible, usually at, or via, the collector's residence, to enable the collector to view his collection, which is highly valued.

16. Individuals with a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in sex with children or child pornography.

17. Individuals with a sexual interest in children prefer not to be without their child pornography, or prohibited from its' access, for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

18. Individuals with a sexual interest in children often have had, or continue to maintain,

7

multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts, but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

19.    Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, another individual with a sexual interest in children, but preferred children of a different age range or ethnicity, might be blocked by the other. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

20.    Based upon my training, knowledge and experience in investigations related to child exploitation and my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the

Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children.

21. Additionally, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of the themselves that would constitute child pornography as well as child erotica.

22. Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media such as Yahoo! Messenger, KIK Messenger and Craigslist and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

## COMPUTERS AND CHILD PORNOGRAPHY

23. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology (including advances in smartphones, tablets and internet connectivity) have revolutionized the way in which children are exploited and how child pornography is produced, distributed, and utilized. Advancements in cellular telephone technology and mobile applications have furthered those revolutionary methods of exploitation.

24. Cellular telephones are routinely connected to computers to re-charge the batteries and synchronize the mobile telephone with their matching computer programs, or "applications," on the computer. Cellular telephones are connected to the user's computer to transfer, save or back-up files or

to download files, programs or "applications" via the internet, as one would do for music or ring tones. Users connect their cellular telephones to their computer to save, or back-up, their content or upload those files via the internet to a virtual storage medium like the iCloud or Facebook, which allow users to access that content from any device with internet access, including their mobile devices (cellular phones or tablets) or another computer. Users can also download programs to their computers that mimic, or operate as if they are using, applications on their cellular telephone. Some of those examples include "iPadian," "Andy," and "BlueStacks." People with a sexual interest in children have embraced these technologies in their efforts to exploit children, conceal their true identities, misdirect investigators, hide evidence and communicate with others with the same interests.

25. Technologies for portable cellular telephones, their batteries, internet connectivity and quick-charge devices have also greatly advanced. Today's vehicles often advertise built-in options for internet connectivity. In early 2013, General Motors announced it would partner with AT&T to outfit most of its 2014 models with high-speed data connectivity, with those same options available from Chrysler, Audi and Ford. These portable devices are commonly stored and used in vehicles and derive their power from being plugged in to cigarette lighters or auxiliary power outlets. Other portable navigation devices, like the Garmin or TomTom, provide turn-by-turn directions to previously unknown locations when the user inputs the desired address or destination and are commonly kept or stored in the user's vehicle. Many modern vehicles are equipped with satellite navigation from the factory. Modern computer technology in today's vehicles can navigate you to your destination, synchronize your cellular telephone to the on-board monitor for hands-free use and adjust radio and environmental controls by responding to voice-activated commands. The suspects' vehicles have increasingly become mobile storage places for evidence like the satellite navigation devices, laptops or storage media concealed from other household members. They also can hold other evidence linked to their travel for contact with like-minded adults and sexually exploited minors; like gasoline, toll booth and parking receipts or traffic

tickets.

26. Prior to the advent of computers and the internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of images. To distribute these images on any scale also required significant resources. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computer technology and the Internet, producers, collectors and distributors of child pornography can instantly and remotely upload images into virtual storage, like in the iCloud, Dropbox or Facebook, allowing them to operate almost anonymously.

27. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers (including cellular telephones) and wi-fi technology has also revolutionized the way in which those who seek child pornography are able to obtain this information. Computers, and the modern "smartphone," allow simplified, often anonymous communication with persons far-removed from the solicitor. They can communicate with others with similar interests or where laws against sex with children are more lax or less enforced. They can also communicate directly with minor victims in a safe environment believing that their communications are anonymous. Computers also serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development and advancement of computers and internet technology has changed the methods used by those who seek to sexually exploit children and obtain access to child pornography in these ways.

28. Producers of child pornography can now produce both still and moving images directly

from a common video or digital camera, including cameras contained in the latest smartphones. A digital camera can be attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

29. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as Comcast, AT&T and America Online ("AOL"), which allow subscribers to dial a local number or otherwise directly connect to a network, which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

30. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in sex with children or child pornography; and (ii) websites that offer images of child pornography. Like-minded individuals with a sexual interest in children and victims of child exploitation, as well as witnesses to online exploitation, can be identified through a person's "contacts" lists, which may be termed in the form of "friends," "contacts," or "followers." Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as

those provided by businesses, universities, and government agencies, to communicate with each other and to distribute or receive child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes, the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" or "relics" of the websites and images accessed by the recipient.

31. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single compact disk can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 500 gigabytes and larger are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

32. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather,

over the course of years, there is probable cause to believe that evidence of the offenses of Possession, Receipt and Transportation of Child Pornography on the SUBJECT PROPERTY. I believe the suspect has demonstrated these offender characteristics based on the images of deceased minors engaged in sexual activity with an adult on his Lenovo laptop computer and the images of nude minors engaged in sexual activity on his Apple iPhone XR model A1984.

35. Based on the above information, there is probable cause to believe that evidence of violations of Title 18 U.S.C. §§ 2252A, which, among other things, makes it a federal crime for any person to possess, receive and transport child pornography; and Title 18 U.S.C. §§ 545, which makes it a federal crime to knowingly import or bring into the United States any merchandise contrary to law, is located on the SUBJECT PROPERTY owned maintained, and/or controlled by Darren McCoy.

Respectfully submitted,

_____
DeWayne Lewis
Special Agent
DHS/ICE/Homeland Security Investigations

Subscribed and sworn to before me telephonically on April \_\_\_3\_\_\_, 2020 and I find probable cause.

_____
The Honorable Andrew M. Edison
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

DESCRIPTION OF ITEMS TO BE SEARCHED

ITEM #1
One Apple iPhone XR, model A1984 located at the DHS Office of U.S. Immigration and Customs Enforcement, Homeland Security Investigations, 601 Rosenberg Avenue, 2nd Floor in Galveston, Texas 77550.

ITEM #2
One Lenovo laptop computer, serial # R90JN90H located at the DHS Office of U.S. Immigration and Customs Enforcement, Homeland Security Investigations, 601 Rosenberg Avenue, 2nd Floor in Galveston, Texas 77550.

ATTACHMENT B

ITEMS TO BE SEARCHED FOR AND SEIZED

1. Evidence and contraband concerning the violation of Title 18, United States Code, Section 2252A and Title 18, United States Code, Section 545 as follows:

    a. all files that depict digital photographs, videos and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children;

    b. Phone numbers, contact information, recent call histories, voicemails, texts, images (to include photographs), video clips and/or instant messages;

    c. Email accounts accessed through the phone;

    d. Emails to include incoming and outgoing

    e. History of websites viewed through the phone and related information;

    f. Internet history and usage data to include websites visited, search terms, cookies, account information, settings, and saved usage information for any and all installed applications, known as "apps" on the device;

    g. SMS/MMS messages and attached multimedia files;

    h. Secondary SMS applications and messages;

    i. Secondary phone number accounts;

    j. Cloud storage and backup files;

    k. Installed applications;

    l. Calendar information;

    m. Files that have been "hidden," erased, compressed, password protected, coded or encrypted;

    n. Deleted data;

    o. Any and all information stored in any related SIM card.